UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

          Plaintiff,

v.

MARK A. RUPPELT,

          Defendant.

Case No. 20-CR-

[18 U.S.C. § 1343]

20-CR-015

---

## INFORMATION

**THE UNITED STATES ATTORNEY CHARGES:**

1. Beginning in approximately May of 2014, and continuing until on or about July 7, 2016, in the State and Eastern District of Wisconsin and elsewhere,

**MARK A. RUPPELT,**

with intent to defraud, knowingly devised and executed a scheme to defraud Client A and to obtain money by means of materially false and fraudulent pretenses and representations, and knowingly caused wire communications to be transmitted in interstate commerce for the purpose of executing the scheme.

### Background

2. At all times relevant to this information:

    a. Mark A. Ruppelt was an attorney licensed to practice law in the State of Wisconsin;

    b. "Client A" was an inmate in a federal prison serving a sentence after having been convicted on federal drug charges; and

    c. "AUSA 1" was an Assistant United States Attorney assigned to handle post-conviction litigation in the case against Client A.

## The Scheme to Defraud

3. The essence of Ruppelt's scheme was to obtain money from Client A by falsely claiming that he had arranged to pay a bribe to a federal judge, a probation officer, and AUSA 1 in exchange for their assistance in obtaining a sentence reduction when, in fact, none of those officials were aware of Ruppelt's representations to Client A and none had offered or agreed to accept a bribe.

4. As part of the scheme:

    a. In approximately February of 2014, based on a referral from a fellow inmate whom Ruppelt had previously represented, Client A contacted Ruppelt. Over the next several weeks, Ruppelt and Client A had a number of discussions via email and by phone during which they discussed the possibility of Client A retaining Ruppelt to pursue a sentence reduction.

    b. In one of those conversations, Ruppelt told Client A that he could get around legal impediments to a sentence reduction because Ruppelt was "willing to do things other lawyers are not."

    c. Ruppelt asked for, and Client A paid, an initial $10,000 "retainer" in May 2014.

    d. In September 2014, Ruppelt told Client A that he had spoken with AUSA 1 and a federal probation officer and that, based on those conversations, Client A would have to pay another $10,000 to have his sentence reduced. As a result of Ruppelt's representation, Client A's stepfather mailed Ruppelt another $10,000 check on approximately September 10, 2014.

    e. In a phone conversation on January 15, 2015, Ruppelt told Client A that another $10,000 payment would "100% secure" a sentence reduction. Client A's stepfather mailed that $10,000 payment to Ruppelt.

    f. On May 9, 2015, Ruppelt told Client A that he had already "taken care of" paying the probation officer and only had to pay AUSA 1.

    g. On November 11, 2015, Ruppelt put Client A off by telling him that, because of the political climate, public officials were not likely to accept a bribe at that time. Ruppelt explained that Hillary Clinton was "under a

2

lot of scrutiny with respect to what happened with the Benghazi stuff and whatnot. . . . There's no one right now that wants to do anything that's gonna jeopardize themselves, which is exactly what would happen if this ever got out."

h. Also on November 11, 2015, Ruppelt falsely told Client A that he had met with the responsible public officials but that he was "not stupid enough to exchange any money with anybody" or "to put anything in the hands of anybody until I got some assurances"

i. On February 16, 2016, Ruppelt again put Client A off, telling him that AUSA 1 still planned to accept a bribe, but wanted to wait until the middle of March or early April to do so.

j. On March 8, 2016, Ruppelt told Client A that the bribery arrangements were in place for the payment to be made a "couple of weeks" down the road, falsely claiming that he had "circled back with [AUSA 1] and I actually think . . . this thing is resurrected and I think we're still a 'go' on this thing. It may be another couple of weeks yet, but based upon what I have done and who I've talked to, I think we're still in a good place."

k. On March 28, 2016, Ruppelt told Client A that he would send Client A a bill that would falsely detail the expenditure of $24,000 of the $30,000 retainer Ruppelt had received from Client A and his family. He also told Client A that he would return the remaining $6,000 for Client A's family to hold until it was needed to complete the bribe to AUSA 1.

l. On April 26, 2016, when Client A inquired about the status of the bill and check, Ruppelt falsely claimed that he had mailed them to Client A's family and that someone had stolen them from the mail.

m. On April 29, 2016, after learning that Client A's mother had filed complaints against him with the Wisconsin Department of Justice and the Office of Lawyer Regulation, Ruppelt told Client A to tell his parents that Ruppelt was willing to "work out" what he characterized as essentially a "fee dispute." Ruppelt told Client A that characterizing their activity as bribery was "not going to do anybody any service" and that Ruppelt did not "want to make matters any worse for any of us."

n. On May 3, 2016, Ruppelt mailed a check for $6,000 to Client A's parents.

3

5. To conceal his scheme, Ruppelt directed Client A to avoid "putting anything in writing or whatnot," explaining that "there can't be any trace of this."

6. As a result of his scheme, Ruppelt fraudulently obtained and attempted to obtain $30,000.

### Execution of the Scheme

7. On or about the dates listed below, for the purpose of executing his scheme and attempting to do so, Ruppelt caused the following wire communications to be transmitted in interstate commerce, between the Eastern District of Wisconsin and the District of Colorado:

| Count | Date | Description |
| --- | --- | --- |
| 1 | February 16, 2016 | Phone call between Ruppelt and Client A, during which Ruppelt falsely told Client A that AUSA 1 was willing to accept a bribe. |
| 2 | March 8, 2016 | Phone call between Ruppelt and Client A, during which Ruppelt again falsely told Client A that AUSA 1 was willing to accept a bribe, stating "I think we're a 'go' on this thing. It may be another couple of weeks yet but, based upon what I have done and who I've talked to, I think we're still in a good place." |
| 3 | April 29, 2016 | Phone call between Ruppelt and Client A during which Ruppelt coached Client A not to characterize any of their arrangements as bribes, because doing so would create problems for both of them, particularly for Client A, who was "in an unenviable position as a federal prisoner." |

Each in violation of Title 18, United States Code, Section 1343.

4

Case 2:20-cr-00015-JPS-NJ   Filed 01/24/20   Page 4 of 5   Document 1

## Forfeiture Notice

1. Upon conviction of one or more of the wire fraud offenses in violation of Title 18, United States Code, Section 1343, set forth in Counts One through Three of this information, the defendant shall forfeit to the United States of America, pursuant to Title 18, United States Cod, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense or offenses of conviction. The property to be forfeited includes, but is not limited to, a sum of money equal to the proceeds derived from the offense or offenses.

2. If any of the property described above, as a result of any act or omission by the defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third person; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be subdivided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

MATTHEW D. KRUEGER
United States Attorney

1-24-2020
Date